## RAMIN v. COSIO et al.
### No. 9734.

Court of Civil Appeals of Texas. Galveston.
June 8, 1932.

Rehearing Denied July 24, 1935.

King, Wood & Morrow and H. Earl Cox, all of Houston, for appellant.

Edgar Soule and Lewis Fisher, both of Houston, for appellees.

LANE, Justice.

This suit was brought by Youphrosene Cosio, a minor, hereinafter for convenience referred to as Miss Cosio, through her father and next friend, J. S. Cosio, and by J. S. Cosio in his own behalf, against Otto Ramin.

Plaintiffs alleged that Miss Cosio was a passenger and guest riding in an automobile owned by Otto Ramin while being driven by his son for a family purpose; that on said occasion said son was driving said automobile at a reckless and dangerous rate of speed under the surrounding circumstances; that he was driving at a speed of 45 to 60 miles per hour along a public highway, weaving in and out of traffic at a time when and where heavy traffic was moving in both directions and at the point where the collision, hereinafter mentioned, occurred; that in so recklessly driving he failed to keep a reasonable lookout for dangers ahead of him as would have been done by a person of ordinary care and prudence under like or similar circumstances; that on the occasion in question he turned from the right side of the highway to the left side thereof to pass around cars ahead of him when traffic was heavy and at the moment cars were coming from the opposite direction, and while doing so he drove negligently and recklessly; and that when he turned from the right side of the highway to pass a car ahead of him and saw a car approaching to the left of him, which to avoid a collision turned to the right, said son, instead of slowing down and resuming a place on the right side of the road, turned his car to the left at almost right angles to the road in front of the approaching car, with which he collided.

They allege that as a result of the collision, which was caused by the negligence of said son, Miss Cosio was seriously injured and by reason of such injuries she had suffered, and would continue to suffer in the future, great mental and physical pain, and that by reason of her injuries she had been rendered totally and permanently disabled; that her arm was shattered, though set and bone healed, is twisted, and will be permanently twisted; that the arm is one inch shorter than before the injury; that an operation was necessary to remove the depressed bone from her brain, the operation necessitating the removal of a piece of bone from her skull 2½ by 1½ inches in size, leaving the area of her skull wholly unprotected by bone; that as a result of the skull fracture and brain injury, she now has the memory and mentality of a child of 7 or 8 years of age, which condition is permanent and lasting, whereas, before the injury, she was a normal person in every way of 18 years of age; and that such injuries and her present and future condition are the direct and proximate result of the negligence of appellant and his son.

Plaintiffs allege that by reason of such injuries, the father, J. S. Cosio, was forced to employ, and did employ, physicians for a period of six months at an expense of $500; that he incurred hospital bills for a period of 30 days in the amount of $118; that he employed trained nurses in the hospital for a period of 30 days at an expense of $329; that he employed a practical nurse for a period of 3 months at an expense of $100; that he bought medicine and medical supplies in the amount of $10 —a total sum of $1,057—and that such fees, charges, and expenses were customary, reasonable, and just; that Youphrosene Cosio was housekeeper for her father, who is a widower, prior to the accident, and had been unable to perform such duties since the accident, to J. S. Cosio's damage in the sum of $9,000 by reason of the loss of such services; and that Youphrosene Cosio had been damaged by reason of her injuries, past, present, and future, and mental and physical pain, past, present, and future, in the sum of $20,000—all arising through the negligence of appellant, directly and proximately.

The appellant answered with a general denial, a plea of contributory negligence on the part of appellees, and each of them, and with a further plea that the minor appellee and appellant's son were engaged in a joint enterprise, making appellees jointly responsible for any negligence on the part of appellant's son.

The cause was tried before a jury upon special issues submitted by the court, in answer to which it found that Otto Ramin's son, Odean Ramin, was operating the Ford car in which Miss Cosio was riding at and immediately before the collision at an excessive and dangerous rate of speed, that such rate of speed was a negligent rate of

speed, and that such negligence was a proximate cause of the collision; that the act of Odean Ramin in attempting to pass the car immediately in front of him, at the time and under the circumstances in evidence, was negligence, and that such negligence was a proximate cause of the collision; that Odean Ramin was guilty of negligence in driving his car to the left after he discovered the Marmon car approaching him from the opposite direction, and that the same was a proximate cause of the collision; that Miss Cosio was not guilty of negligence in failing to protest to the driver of the Ford car with respect to the manner in which the same was being driven at and immediately before the collision; that Miss Cosio was entitled to recover $5,000 damages of Otto Ramin to fairly and adequately compensate her for the injuries which resulted solely and proximately from the collision, taking into consideration the following elements of damage, and none other: (1) Physical pain and mental anguish which she had suffered up to the time of the trial; (2) such physical pain and mental anguish as she would in reasonable probability suffer in the future; and (3) impairment of the memory and mentality of Miss Cosio up to the time of the trial and such impairment of memory and mentality as she would sustain in the future.

That the appellee, J. S. Cosio, was entitled to recover in his own behalf the sum of $1,500 to fairly and adequately compensate him for his injuries that resulted exclusively and proximately from the collision in question, taking into consideration the following elements of damage, and none other: (1) The reasonable and necessary expenses for physicians and surgeons which he had incurred or paid; (2) the reasonable and necessary expenses for nursing which he had incurred or paid; (3) the reasonable and necessary expenses for medicines which he had incurred or paid; (4) the reasonable and necessary expenses of hospital attention which he had paid or incurred; and (5) the reasonable value of the diminution of the services of his daughter during her minority.

Judgment was duly entered on the 22d day of April, 1931, on the verdict of the jury, which was rendered on the 15th day of April, 1931, in favor of appellees and against appellant.

The evidence shows that the car driven by Odean Ramin, son of appellant, was a Ford, and the other car in the collision was a Marmon; therefore, for convenience, they will be referred to, respectively, as the Ford car and the Marmon car.

As already stated, in answer to special issues submitted, the jury found: (1) That Odean Ramin, at and immediately before the collision, was driving the Ford car at an excessive and dangerous rate of speed; (2) that such act was negligence and a proximate cause of the collision; (3) that in attempting to pass cars in front of him at the time and under the surrounding circumstances, Odean Ramin was guilty of negligence and that such negligence was a proximate cause of the collision; (4) that Odean Ramin was guilty of negligence in driving his car to the left after he discovered the Marmon car approaching him from the opposite direction. They also found that Miss Cosio was not guilty of negligence in failing to protest to the driver of the Ford car with respect to the manner in which the same was being driven.

Appellant requested the court to submit to the jury the following inquiries: Was the operator of the Marmon automobile passing either or both of the cars approaching him, just prior to the collision, at a speed in excess of 15 miles an hour? If so, was such act the sole proximate cause of the collision? The court refused to submit such inquiries, and appellant has presented such refusal as his first assignment of error.

Appellant's contention is that there was evidence sufficient to support a finding that the driver of the Marmon car, just prior to the collision, passed other cars going in an opposite direction at a rate of speed in excess of 15 miles an hour, in violation of article 794, Penal Code of Texas, and therefore appellant should have been given an opportunity, under a proper charge, to argue to the jury that the driver of the Ford car was not guilty of any negligence proximately causing the collision, but that such collision was proximately caused solely by the negligence of the driver of the Marmon car in exceeding the speed limit fixed by article 794, supra.

We overrule the assignment and contention. In our opinion the evidence does not call for the submission of the requested inquiries. The undisputed evidence shows that a number of automobiles, the exact number not shown, were just ahead of the driver of the Ford car on the right-hand side of the highway going westward; that

they were meeting the Marmon car to their left, going in the opposite direction; that the driver of the Ford car, just before the collision occurred, pulled out from the rear of and to the left of the cars going westward, at a rate of speed of 40 to 45 miles an hour in an effort to pass them; that when he first passed to the left from behind such cars, he saw the Marmon car approaching him, going in an opposite direction at an estimated distance of 300 to 400 feet; that notwithstanding he saw such approaching car, he did not slacken his speed of 40 to 45 miles an hour.

Witness Pierson testified that the driver of the Ford car not only failed to slacken his speed, but, to the contrary, he increased his speed as he undertook to pass the Marmon car.

The undisputed evidence not only supports a finding that just prior to the accident the driver of the Ford car was guilty of negligence as a matter of law in undertaking to pass a car at a rate of speed in excess of the speed limits provided by article 794, supra, but it would also support a finding that he violated the provisions of article 790 of our Penal Code, which reads as follows: "No person operating or driving a motor or other vehicle upon the public highways shall pass any motor or other vehicle, person or thing on any public highway of this State at such rate of speed as to endanger the life or limb of any person or the safety of any property."

Appellant, however, in effect argues that there was ample evidence to show that his son, the driver of the Ford car, was not violating any law. Such argument has no support in the evidence already stated, but its absurdity is further shown by the undisputed testimony of several of the persons who were with him in the Ford car, who testified that just as Odean Ramin turned to the left to pass the cars in front of him, they saw the Marmon car approaching, and that Odean was traveling 40 or 45 miles an hour, and that he did not slacken his speed until just about the time the two cars were about to collide, and then Odean turned further to the left in front of the Marmon car after it had turned to the right off of the paved road to avoid the collision; that the Marmon car had slowed down before the collision.

Cecil Fisher, who was in the Ford car, testified that as Odean turned to pass the car in front of him the Marmon car was at least 600 feet from the Ford car; that

he did not think that Odean Ramin tried to apply his brakes after he turned to the left meeting the Marmon car.

Miss Samora, riding in the Ford car, testified that just as they were passing the first car ahead of them, she saw the Marmon car and that she knew that it was more than a city block from the Ford car, which was going at least 40 miles an hour or over, but that she did not think that its speed was over 45 miles an hour.

Odean Ramin, driver of the Ford car, testified that just as he turned out and was about to pass the car ahead of him, he was going between 40 and 45 miles per hour; that when he first saw the Marmon car, as he passed from behind the car in front of him, it was between 300 to 400 feet from him.

Surely, under the evidence shown, the court was not called upon to submit the inquiry as to whether or not negligence of the driver of the Marmon car, if any, was the *sole* proximate cause of the collision.

We next go to a consideration of the question as to whether or not the evidence demanded at the hands of the court the submission of the inquiry as to whether or not the driver of the Marmon car passed either or both of the cars approaching him, just prior to the collision, at a speed in excess of 15 miles an hour.

As already stated, the evidence shows that the Marmon car was from 300 to 400 feet from the driver of the Ford car when the driver of the Ford car saw the Marmon car approaching him from a direction opposite from that being traveled by the Ford. The driver of the Marmon car testified that at the time the Ford car pulled out of the line of traffic to his left and in front of him, he (the driver of the Marmon car) was not going over 25 miles an hour, and that when he saw the Ford car turn out he immediately pulled over and applied his brakes, threw his clutch in, and reduced speed; that he pulled over off the road onto the soft shoulder; that at the time the cars came together he was not going over 15 miles an hour, if that.

Witness Pierson testified that Odean Ramin had just pulled around him and had passed him about 20 feet when he hit the Marmon car.

While the driver of the Ford car and two of the occupants of the same testified that when they first saw the Marmon car approaching, at a distance estimated at 300

to 400 feet, they thought it was making a speed of 35 to 40 miles an hour, there was no testimony identifying either of the two cars passed by the Marmon car, or to show that at the time the Marmon car passed any car just before the collision it was going at a rate of speed in excess of 15 miles an hour. The only testimony which might be said to show, or tend to show, that the Marmon car ran over 15 miles an hour in passing any car, was the testimony of the witness Pierson, who testified in part as follows: "The Marmon car was off the asphalt over on his right hand side of the road. I did see that Marmon car when it turned off the asphalt; I couldn't help seeing it. That Marmon car pulled over to his right, to give Odean room to go down through the center, and when the Marmon pulled to the right Odean pulled to the left, to the ditch. Odean didn't slacken his speed at all, but the way I judge it he increased his speed to get out of the way of the Marmon. Those two automobiles did hit. At the time they hit, I judge the Marmon was traveling about twenty miles an hour, because he slid his casings. The Marmon did slow up. When I say he slid his casings, I mean he applied his brakes.' After Odean's car struck the Marmon car, Odean's car travelled about thirty feet."

Such uncertain testimony, gathered at a time and under the exciting circumstances shown, ought not to be held sufficient to convict the driver of the Marmon car of the violation of a penal law.

Miss Ruby Patton, a passenger in the Marmon car, testified as follows: "We were traveling about fifteen miles an hour when we hit this car. As I said, before we slowed down, we were going about twenty miles an hour. We hadn't travelled any faster than twenty miles an hour after we left the Rountree Motor Company. We were just going along leisurely."

By no stretch of the imagination, we think, could it be reasonably thought that the evidence would support a finding that negligence of the driver of the Marmon car, if any, was the *sole* proximate cause of the collision; then why should we hold that the court erred in not submitting such absurd question to the jury? Assuming that under the evidence there had been negligence on the part of the driver of the Marmon car, which by no means can be reasonably assumed, such negligence would

have been only that of a joint tort-feasor, and not the *sole* proximate cause of the collision, and it would not have relieved appellant of the indisputable negligence of his son, Odean Ramin, who was shown by the undisputed evidence to have been violating the penal statutes just before and at the time of the collision.

Counsel for appellant requested the court to submit to the jury the following:

"Was the collision between the defendant's automobile and the Marmon car the result of an unavoidable accident?

"Answer 'Yes' or 'No' as you find the fact to be.

"In connection with this issue, you are instructed that by the term 'unavoidable accident' is meant an unforeseen occurrence transpiring without the negligence of any person whomsoever."

The court refused to submit the same as an issue raised by the evidence, which refusal is assigned by appellant as reversible error.

We overrule the assignment.

 In cases of the character of the one in controversy, the rule is that, unless there is evidence tending to show that the accident in controversy, which is charged to have resulted from the negligence of the defendant, happened from some unknown cause, or in a manner which cannot be explained, or under the circumstances different from those relied on in constituting a part of plaintiff's cause, and which circumstances rebut the charge of negligence for which the defendant is alleged to be responsible, then it is not incumbent upon the trial court to submit the issue of unavoidable accident as a defense, in addition to a proper submission of the issues of negligence and contributory negligence as to all parties to the suit. Boyles v. McClure (Tex. Com. App.) 243 S. W. 1080; Wichita Falls Traction Co. v. Craig (Tex. Civ. App.) 250 S. W. 733; Eastern Texas Electric Co. v. Hunsucker (Tex. Civ. App.) 280 S. W. 887; Northern Texas Traction Co. v. Armour & Co. (Tex. Civ. App.) 290 S. W. 544; International-Great Northern R. Co. v. Hailey (Tex. Civ. App.) 9 S.W.(2d) 182; Russell v. Bailey (Tex. Civ. App.) 290 S. W. 1108; Rosenthal Dry Goods Co. v. Hillebrandt (Tex. Com. App.) 7 S.W.(2d) 521, 522, 523.

The issues of negligence and contributory negligence submitted to the jury excluded the theory of inevitable accident

which could be urged under any of the facts proved. No testimony was introduced tending to show the accident in the present case resulted from some unknown cause, or in a manner which cannot be explained, or by reason of circumstances different from those relied upon by the parties as constituting negligence of the driver of the Ford car, or contributory negligence of the driver of the Marmon car, or the combined negligence of both.

It is elementary that an issue should not be submitted to the jury when there are no facts in the case raising such issue. The issue of unavoidable accident was not raised by any evidence, but, to the contrary, it was negatived by the facts shown.

In Rosenthal Dry Goods Co. v. Hillebrandt, supra, in an opinion by the Commission of Appeals, it is said: "The issue of 'unavoidable accident' arises only when 'there is evidence tending to show that the accident in controversy, which is charged to have resulted from the negligence of the defendant, happened from some unknown cause, or in a manner which cannot be explained, or under circumstances differing from those relied on and constituting a part of plaintiff's case, and which circumstances rebut the charge of alleged negligence for which the defendant is responsible.' "

■ By the fifth assignment appellant complains of the failure of the court to properly define "proximate cause" with respect to the effect of a new and independent cause, or new and intervening cause. He argues that the failure to submit the idea of a new and intervening agency for the jury's consideration in connection with "proximate cause" was error.

This assignment has been so fully and completely answered by what we have said under assignments 1 and 2, it becomes unnecessary for us to further discuss this assignment. The assignment is overruled.

We overrule appellant's complaint of the charge of the court on the burden of proof. The complaint is too technical to be of merit. The charge fairly submits the issue of burden of proof. See St. Louis Southwestern Ry. Co. v. Preston (Tex. Com. App.) 228 S. W. 928–933.

■ By appellant's assignment No. 8, presented under his proposition 5, he complains of the refusal of the court to submit an inquiry as to whether the failure of the Marmon car driver to stop, prior to the collision, was, under the circumstances, negligence and the sole proximate cause of the collision, and contends that such refusal placed the driver of the Ford car in the position of a violator of law, a speeder, one out of his rightful place on the highway, and placed the driver of the Marmon car in the position of harmless offender.

We have already stated the evidence which clearly and indisputably shows that as a fact the driver of the Ford car, at the time of the collision, was a reckless speeder, utterly disregarding those in his car as well as those approaching him on their right side of the highway. It is shown that the driver of the Marmon car pulled off the paved road onto the soft shoulder, that he applied his brakes and slowed down, and to require the court to submit the inquiry as to whether the acts of the driver were negligence, the *sole* proximate cause of the collision, would be to go blind to the facts proven.

What we have said under the next preceding assignment applies with equal force to assignment 10, proposition 6, of appellant, and we therefore overrule the same without further comment.

■ By the third section of special issue No. 10 submitted, the jury was asked to find what sum, if paid in cash, would fairly and adequately compensate Miss Cosio for injuries, if any, which they might find to have resulted solely and proximately from the collision, taking into consideration impairment of memory and mentality of Miss Cosio, if any, up to the time of the trial; and such impairment of memory and mentality as they might find she will suffer in the future, if any.

Appellant attacks the issue as submitted, insisting that since the court had by special issue No. 11 authorized recovery in behalf of Miss Cosio's father the reasonable value of the diminution of the services of his daughter, if any, during her minority, this issue allowed double damages; that the jury is allowed in each of such issues to assess damages to the girl by reason of her diminished capacity to perform services and to also allow the father to recover for the same injury.

The contention of appellant is without merit and is overruled. It is clearly apparent that section 3 of special issue 10 does not authorize a recovery in behalf of Miss Cosio for diminished capacity to labor, but only authorizes a recovery for impairment of memory and mind, and it is equally clear

that by issue 11 no recovery is authorized for the father for the impairment of the memory and mind of his daughter, and that the only recovery allowed under issue 11 was for the diminution of the services, the labor, of his daughter, if any, during her minority.

Appellant assigns the court's definition of "proximate cause" as reversible error.

We overrule the assignment. We think the definition amply clear to the mind of any juror of ordinary intelligence.

We have examined and considered the two remaining propositions of appellant, and having done so, we overrule each of them as without merit.

The judgment is affirmed.

Affirmed.